UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MURRAY GALLUP, III,

    Plaintiff,                                     Hon. Sally J. Berens

v.                                                   Case No. 1:22-cv-1076

UNKNOWN VITALE, et al.,

    Defendants.

_____/

## OPINION

Plaintiff Robert Gallup, III filed a pro se complaint on November 17, 2022, pursuant to 42 U.S.C. § 1983 against numerous Defendants, alleging various claims arising out of separate incidents. Gallup was a pretrial detainee at the Kent County Correctional Facility at the time he filed this action but is now confined with the Michigan Department of Corrections following his guilty pleas to various charges brought in several cases. (ECF No. 27-7.) After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court allowed Gallup's Fourth Amendment excessive force claim against Defendant Elliot and his Fourth Amendment unlawful entry claim against Defendant Bailey to proceed. (ECF Nos. 7 and 8.)

Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 26.) Gallup has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore*

*Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Having reviewed Defendants' motion and evidence in accordance with the foregoing standard, the Court will **GRANT** the motion.[1]

## I. Background

### A. Gallup's Allegations

The Court summarized Gallup's complaint allegations in its February 22, 2023 Opinion as follows:

> Plaintiff alleges that, on or about September 9, 2022, Plaintiff was at home on his back porch when he heard his roommate shout that someone was at the house. (*Id.*, PageID.6.) Plaintiff then heard "some kind of havoc in the house," and "instinctively ran." (*Id.*) When Plaintiff turned around, Plaintiff saw a man he did not know shooting at him. (*Id.*) Plaintiff continued to run and was shot in the back of his right arm/elbow. (*Id.*, PageID.6–7.) Plaintiff later learned that the man who had shot him was Defendant Elliot. (*Id.*, PageID.7.) Prior to shooting Plaintiff, Plaintiff alleges that Defendant Elliot did not announce himself as a police officer. (*Id.*) Defendant Elliot was also not wearing a uniform or any other apparel that would have indicated that he was a police officer. (*Id.*) Plaintiff also later learned that Defendant Bailey had been the individual "ransacking and invading" Plaintiff's home. (*Id.*) Defendant Bailey did not announce himself or otherwise indicate that he was a police officer. (*Id.*)

(ECF No. 7 at PageID.32.)

### B. Defendants' Version

Defendants' summary judgment evidence, which includes video footage, tells a much different story. On September 9, 2022, Defendants Detective Shawn Bailey and Detective Bertrand Elliott of the Walker Police Department went to 988 Cedar Run Court—a townhome located in Walker, Michigan—to speak with two suspects, Gallup and Nickolas Schalk, in connection with a stolen motorcycle complaint. Based on an inquiry through the Law Enforcement Information

---

[1] Pursuant to 28 U.S.C. § 636(c), Gallup and Defendants have consented to the undersigned conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters. (ECF Nos. 23 and 24.)

Network (LEIN), Defendants knew that Schalk had active outstanding warrants and believed that he would likely flee upon contact. When they arrived at the townhome, Defendant Elliott went behind the building to watch the back door, while Defendant Bailey went to the front door. (ECF No. 27-1 at PageID.108; ECF No. 27-2 at PageID.111.) Bailey knocked on the front door and Kathryn Pojeski, the resident, answered and stepped outside to speak with him. (*Id.*; ECF No. 27-9 at PageID.141.) Defendant Bailey's bodycam video, submitted as Exhibit No. 3 (ECF No. 27-3), shows Bailey asking Pojeski about Schalk's and Gallup's whereabouts. At first, Pojeski was evasive and denied that they were in the townhome. She also declined Bailey's request to enter the apartment to search for them. Bailey asked Pojeski whether there were any weapons inside the townhome, and Pojeski confirmed that there were none. After several minutes, Pojeski changed her mind and went inside to retrieve Schalk and Gallup. Video footage with audio from Pojeski's internal video system, submitted as Exhibit 4 (ECF No. 27-4), shows Gallup come down the stairs and speak with Pojeski, pleading with her not to allow the police inside as she reaches for the door. While waiting outside, Bailey heard arguing inside and warned Pojeski that her door would be "knocked down" if she did not open it. (ECF No. 27-3.) At that point, Gallup ran to the rear exit and onto the back porch. (ECF No. 27-9 at PageID.142.) As Pojeski opened the door, she told Bailey that Gallup was heading out the back. Bailey asked Pojeski if he could pursue Gallup through the apartment, and she stood back from the doorway to allow him inside. (ECF No. 27-2 at PageID.112; ECF No. 27-9 at PageID.142.)

Defendant Elliott saw Gallup go onto the deck and jump over the rear deck railing while attempting to flee. He announced himself as a police officer and attempted to stop Gallup in order to detain him as he got up from his fall off the elevated deck, but Gallup quickly got back on his feet and began to run. (ECF No. 27-1 at PageID.108–09.) As Defendant Elliott pursued Gallup,

3

Gallup turned and yelled, "I'll shoot you," and pointed a black handgun toward Elliott from a distance of about 10-15 feet. Because Elliott determined that Gallup posed a clear risk of death or great bodily harm to him, he drew his service weapon and discharged it three times while Gallup was pointing his gun at Elliott. (*Id.* at PageID.109.) One of the bullets hit Gallup in his right arm or elbow. (ECF No. 1 at PageID.7.) Elliott continued to pursue Gallup, but Gallup positioned himself behind a vehicle and pointed his weapon at Elliott over its trunk. Given the distance and residential nature of the area, Elliott decided not to engage Gallup, who eventually fled the scene in his vehicle. (ECF No. 27-1 at PageID.109.) Video footage from Defendant Elliott's bodycam, submitted as Exhibit 5 (ECF no. 27-5), confirms Elliott's version of events.

Gallup was eventually apprehended and taken into custody after a high-speed pursuit. He ultimately pled guilty to several charges, including felonious assault for pointing and attempting to fire his gun at Defendant Elliott. (ECF No. 27-7 at PageID.132.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

As noted above, Plaintiff claims that Defendant Elliott's use of deadly force and that Defendant Bailey's entry into the townhome without a warrant violated the Fourth Amendment.

A.   **Excessive Force**

1.   *Heck v. Humphrey*

Defendant Elliott contends that Gallup's excessive force claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), based on his guilty plea to felonious assault. The *Heck* doctrine provides that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Court held that a state prisoner cannot make a cognizable claim under Section 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (footnote omitted).

In light of the evidence discussed below, Gallup could not prevail on his excessive force claim even if it is not *Heck*-barred. Because the *Heck* doctrine is not jurisdictional, the Court may bypass the *Heck* analysis and consider the merits of the claim. *See Garshott v. St. Clair Cnty. Sheriff's Deputy O'Donnell*, No. 13-15085, 2016 WL 892801, at *6 (E.D. Mich. Mar. 9, 2016) (bypassing the *Heck* analysis and proceeding to consider the merits of the plaintiff's excessive force claim) (citing *Polzin v. Gage*, 636 F.3d 834, 837–38 (7th Cir. 2011) (stating that "[t]he *Heck* doctrine is not a jurisdictional bar" and holding that "district courts may bypass the impediment of

the *Heck* doctrine and address the merits of the case")); *see also Kitchen v. Snyder*, No. 18-11430, 2019 WL 3859887, at *1 (E.D. Mich. Aug. 16, 2019) (collecting cases holding that a *Heck* challenge does not implicate a federal court's subject matter jurisdiction).

### 2. Qualified Immunity

Defendant Elliott contends that he is entitled to qualified immunity on Gallup's excessive force claim. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016). In this case, the Court need only address the first step of the analysis.

An excessive force claim must be analyzed under the Fourth Amendment's standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). This standard must

be applied in light of the reality that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397. Thus, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In determining whether an officer's actions were reasonable, the court must examine the specific facts of the case. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Factors that bear on the issue are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is cooperating or is actively resisting arrest or attempting to flee. *Id.* The test is "fact specific, not mechanical[.]" *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008). When as here, a police officer employs deadly force, "the critical factor is whether the suspect presented an immediate danger to the officers or others." *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020) (citing *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015)). "To that end, an officer's use of deadly force is only reasonable if she had 'probable cause to believe that the suspect pose[d] [such] a threat.'" *Id.* (quoting *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).

Here, the evidence is unequivocal. Defendant Elliott has demonstrated through his declaration and the video evidence that Gallup not only possessed a gun, but pointed it at Elliott. As noted in *Boyd v. Baeppler*. 215 F.3d 594 (6th Cir. 2000), the issue material to the use of deadly force analysis is whether the suspect "pointed his weapon at the officers and thus posed an immediate threat to them." *Id.* at 599. In a situation such as this, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The evidence supporting

Defendant Elliott's version compels the conclusion that his use of deadly force was objectively reasonable.

As noted above, because Gallup cannot demonstrate the violation of a constitutional right, there is no need to address the second step of the qualified immunity analysis. Therefore, summary judgment is proper on this claim.

**B.     Unlawful Entry**

Gallup alleges that Defendant Bailey's warrantless entry into the townhome violated Gallup's Fourth Amendment rights. The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Am. IV. "Reasonableness is the key, the existence of a warrant often its measure. A warrantless search of a home or business is presumptively unreasonable." *Benjamin as Tr. of Rebekah C. Benjamin Tr. v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)). However, there are several well-known exceptions to the warrant requirement, one of which is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A person may freely and voluntarily waive his or her Fourth Amendment rights by consenting to a search. *See Davis v. United States*, 328 U.S. 582, 593–94 (1946). Consent must be freely and voluntarily given, and it "'may be in the form of words, gesture, or conduct.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)).

Here, it is undisputed that Pojeski was the sole leaseholder of 988 Cedar Run Ct. (ECF No. 27-9 at PageID.141.) Although Defendant Bailey argues that Gallup was not a tenant of the residence, he concedes that, as Pojeski's alleged guest, Gallup had a legitimate expectation of privacy protected by the Fourth Amendment. (ECF No. 27 at PageID.102 (citing *Minnesota v. Olson*, 495 U.S. 91, 96–100 (1990)). Still, Gallup's privacy interest would not preclude Pojeski— the sole lessee and/or co-resident—from giving Bailey consent to enter the premises. *United States*

*v. Matlock*, 415 U.S. 164, 169–72 (1974); *see also United States v. Johnson*, 22 F.3d 674, 678 (6th Cir. 1994) (noting that a third party who possesses common authority over the premises may validly consent to a search) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). As the leaseholder, Pojeski clearly had common authority over the townhome. In addition, she confirms in her affidavit that she voluntarily gave consent to Bailey to enter the townhome (ECF No. 27-9 at PageID.142), and her act of stepping aside to let Bailey enter, as depicted in the video, confirms at least implicit consent.

Accordingly, Gallup fails to establish that Bailey violated his Fourth Amendment rights. Because there was no constitutional violation, the Court need not address the second step of Bailey's qualified immunity defense.

### IV. Conclusion

For the reasons set forth above, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 26) and dismiss Gallup's complaint with prejudice.

A separate Order consistent with this Opinion will be entered.

Dated: November 14, 2023                          /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge